UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| VICTORIA LAUDIEN, Individually and as Administratrix of the Estate of MARK GIRARD, deceased, <br><br> Plaintiffs <br><br> vs. <br><br> DONNA CAUDILL, TRACY BLAIR, a.k.a. TRACY SPEARS, LACY CROTHERS, a.k.a. LACY GRIM, a.k.a. LACY SPEARS, WILLIAM THOMAS CROTHERS, a.k.a. BILL TOM CROTHERS, and JOHN DOES 1-10 (said names being fictitious, <br><br> Defendants | Docket No. <br><br><br><br> **COMPLAINT** |

The plaintiff, Victoria Laudien, individually and as Administratrix to the Estate of Mark Girard, as and for her complaint against, Donna Caudill, Tracy Blair, a.k.a. Tracy Spears, Lacy Crothers, a.k.a. Lacy Grim, a.k.a. Lacy Spears, William Thomas Crothers, a.k.a. Bill Tom Crothers, and John Does 1-10 (said names being fictitious), with knowledge as to her own acts and upon information and belief as to all others, states and alleges as follows:

## INTRODUCTION

1.      This action arises out of an apparently organized effort by the defendants, who are associated in fact, to defraud decedent Mark Girard, a quadriplegic, of all of his assets via the repeated commission of bank fraud, and then to plot a pre-meditated murder by arson that ultimately occurred on January 3, 2012, in order to evade detection and to avoid prosecution for their grievous

crimes, allowing them thereafter to obtain the remainder of Girard's assets through an ill-gotten inheritance.

2.      Mark Girard was a resident of 1132 State Street, Paintsville, Johnson County, Kentucky at the time of his death. He perished by fire which, upon information and belief, was set by one or more of the defendants for the purpose of murdering him. Thus, venue is proper pursuant to 28 U.S.C. §1391(b), since a substantial part of the events given rise to the claims occurred in the Pikeville Judicial District.

3.      This matter is brought pursuant to 18 U.S.C. §1961 *et seq.* ("RICO"), more particularly, 18 U.S.C. §1962(a), (c) and (d), and is based on predicate acts which including numerous instances of financial institution fraud in violation of 18 U.S.C. §1344(2); engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. §1957; interstate and foreign travel or transportation in aid of racketeering enterprises, accomplished through use of the U.S. Mail, in violation of 18 U.S.C. §1952; violation of the drug laws of the United States in violation of 21 U.S.C. §§802 and 841; arson, conspiracy to commit murder; and pre-meditated murder, all in violation of state and or federal statutes and common law. Thus, jurisdiction of this Court is appropriate as the allegations concern federal questions in keeping with 28 U.S.C. §1331.

4.      Each and every defendant remains unindicted, unprosecuted, and at-large despite the heinous atrocities that are believed to have been directed and/or carried out by their hands.

<u>**THE PARTIES**</u>

5.      Victoria Laudien is the Administratrix of the Estate of Mark Girard, and is his natural heir. She lives in Toms River, New Jersey.

6.      Defendant Donna Caudill lives at 238 Brooks Conley Road, Staffordsville, Kentucky 41256, was married to Mark Girard between January 1, 2001 and about May 7, 2003, and is a "person" as defined by 18 U.S.C. §1961(3).

7.      Defendant Tracy Blair, a.k.a. Tracy Spears, is an individual residing at 1004 Maple Street, Paintsville, Kentucky, is the daughter of Donna Caudill, and is a "person" as defined by 18 U.S.C. §1961(3).

8.      Defendant Lacy Crothers, a.k.a. Lacy Grim, a.k.a. Lacy Spears, is an individual residing at 610 Middle Fork Road, Hager Hill, KY, is the daughter of Donna Caudill, is or was the spouse of defendant William Thomas Crothers, a.k.a. Bill Tom Crothers, having been wed to him on August 24, 2011, and is a "person" as defined by 18 U.S.C. §1961(3).

9.      Defendant William Thomas Crothers, a.k.a. Bill Tom Crothers, is an individual with an address of 624 Lincoln Avenue, Paintsville, KY, and is or was the spouse of Lacy Crothers, a.k.a. Lacy Grim, a.k.a. Lacy Spears, and is a "person" as defined by 18 U.S.C. §1961(3).

10.     John Does 1-10 is a fictitious name for individuals who are as yet identified who conspired in association with the other defendants for the purpose of enriching themselves and other defendants at the cost of the fortune and life of Mark Girard, and are  "persons" as defined by 18 U.S.C. §1961(3).

### FIRST COUNT

*Racketeering: 18 U.S.C. §1962(a)*

11.     The plaintiff repeats and reasserts each and every allegation above as if fully set forth herein at length.

12.     On November 2, 2011, check number 1317 was drawn on the IOLA account of the law firm of Bonfiglio & Asterita, LLC, 900 South Avenue, Suite 101, Staten Island, New York 10314, which it maintained with SI Bank & Trust of New York, and was sent to Mark Girard.  The check represented the net proceeds of Girard's sale of an interest in a parcel of commercial real estate located on Flatbush Avenue, Brooklyn, New York City, New York.  A true copy of said check is attached hereto as Exhibit "A".

3

13.    Girard was a quadriplegic and was generally unable to care for himself.

14.    The defendants almost immediately became aware that Girard had received said check drawn on the New York bank account of Bonfiglio & Asterita.

15.    Fearing that if he deposited the check he would be unable to gain entry into a nursing care facility, which was critical to him given his physical condition and the lack of the care provided to him, Girard did not deposit said check, and instead believed that he maintained same within his residence at 1132 State Street, Paintsville, Kentucky.

16.    Upon information and belief, in association with one another, defendants determined that for their benefit, they would deposit said check in Mark Girard's bank account, located at Citizens National Bank, Paintsville, Kentucky, and thereafter draw down the account for their sole and exclusive enrichment and benefit, while depriving Girard of same without his knowledge.

17.    The association-in-fact of the defendants ("the Caudill Association") constitutes an "enterprise" as defined by 18 U.S.C. §1961(4).

18.    On November 3, 2014, without knowledge of Mark Girard, the subject check was negotiated and drawn on the Bonfiglio & Asterita IOLA account in New York, and as a result, the Caudill Association by its actions affected interstate commerce.

19.    Between November 3, 2011 and January 2, 2012, the Caudill Association, through defendants or some of them, drew down Girard's bank account numerous times, without Girard's knowledge, each of which event constituted a separate violation of 18 U.S.C. §1344(2), in that they were obtaining monies, funds, credits, assets, and/or other property under the custody of Citizens National Bank of Paintsville, Kentucky, held in account number 20010168, through the means of false and fraudulent pretenses and/or representations which included, to wit, the forgery of Mark Girard's signature and the unauthorized use of a debit card in his name which had been issued for his exclusive use.

4

20.    Withdrawals were electronically taken and purchases were made from said bank account by one or more individual defendants for the purpose of benefiting the enterprise of the Caudill Association including, but not limited to the following:

A.  Date:           11/9/2011
    Description:  Withdrawal at Village Plaza, Paintsville, KY
    Amount:        $200

B.  Date:           11/9/2011
    Description:  Withdrawal at Village Plaza, Paintsville, KY
    Amount:        $100

C.  Date:           11/14/2011
    Description:  Withdrawal at Village Plaza, Paintsville, KY
    Amount:        $300

D.  Date:           11/14/2011
    Description:  Withdrawal at Village Plaza, Paintsville, KY
    Amount:        $200

E.  Date:           11/16/2011
    Description:  Withdrawal at Village Plaza, Paintsville, KY
    Amount:        $300

F.  Date:           11/16/2011
    Description:  Withdrawal at 1404 Mayo Plaza, Paintsville, KY
    Amount:        $250

G.  Date:           11/16/2011
    Description:  Withdrawal at 1404 Mayo Plaza, Paintsville, KY
    Amount:        $250

H.  Date:           11/16/2011
    Description:  Payment to American Electrical Power via BillMatrix, Columbus, OH
    Amount:        $222.76

I.  Date:           11/16/2011
    Description:  Withdrawal at Village Plaza, Paintsville, KY
    Amount:        $200

J.  Date:           11/17/2011
    Description:  Withdrawal at Astera Mayo, Paintsville, KY
    Amount:        $202.50

K.  Date:          11/17/2011
    Description:   Withdrawal at 1404 Mayo Plaza, Paintsville, KY
    Amount:        $202.50

L.  Date:          1/17/2011
    Description:   Payment to American Electric Power via BillMatrix, Columbus, OH
    Amount:        $143.24

M.  Date:          11/17/2011
    Description:   Payment to American Electric Power via BillMatrix, Columbus, OH
    Amount:        $88.92

N.  Date:          11/17/2011
    Description:   Withdrawal at 1404 Mayo Plaza, Paintsville, KY
    Amount:        $62.50

O.  Date:          11/17/2011
    Description:   Withdrawal at 1404 Mayo Plaza, Paintsville, KY
    Amount:        $42.50

P.  Date:          11/17/2011
    Description:   Payment to Southern Link Communications, West Virginia
    Amount:        $346.99

Q.  Date:          11/21/2011
    Description:   Withdrawal at Village Plaza, Paintsville, KY
    Amount:        $240.00

R.  Date:          11/21/2011
    Description:   Withdrawal at 1404 Mayo Plaza, Paintsville, KY
    Amount:        $220.00

S.  Date:          11/22/2011
    Description:   Withdrawal at 513 South Mayo, Paintsville, KY
    Amount:        $302.50

T.  Date:          11/22/2011
    Description:   Withdrawal at 513 South Mayo, Paintsville, KY
    Amount:        $202.50

U.  Date:          11/22/2011
    Description:   Withdrawal at 513 South Mayo, Paintsville, KY
    Amount:        $202.50

V.  Date:          11/28/2011
    Description:   Withdrawal at 513 South Mayo Plaza, Paintsville, KY
    Amount:        $302.50

W. Date:         11/28/2011
   Description:  Withdrawal at Village Plaza, Paintsville, KY
   Amount:       $300.00

X. Date:         11/28/2011
   Description:  Withdrawal at 513 South Mayo Plaza, Paintsville, KY
   Amount:       $300.00

Y. Date:         11/28/2011
   Description:  Withdrawal at 513 South Mayo Plaza, Paintsville, KY
   Amount:       $200.00

Z. Date:         11/28/2011
   Description:  Withdrawal at Village Plaza, Paintsville, KY
   Amount:       $100.00

AA. Date:        12/2/2011
    Description: Withdrawal at 15 South Mayo Plaza, Paintsville, KY
    Amount:      $300.00

BB. Date:        12/2/2011
    Description: Withdrawal at 15 South Mayo Plaza, Paintsville, KY
    Amount:      $200.00

CC. Date:        12/5/2011
    Description: Withdrawal at 15 South Mayo Plaza, Paintsville, KY
    Amount:      $300.00

DD. Date:        12/5/2011
    Description: Withdrawal at 15 South Mayo Plaza, Paintsville, KY
    Amount:      $300.00

EE. Date:        12/5/2011
    Description: Withdrawal at 15 South Mayo Plaza, Paintsville, KY
    Amount:      $300.00

FF. Date:        12/5/2011
    Description: Withdrawal at 15 South Mayo Plaza, Paintsville, KY
    Amount:      $200.00

GG. Date:        12/5/2011
    Description: Withdrawal at 15 South Mayo Plaza, Paintsville, KY
    Amount:      $200.00

HH.   Date:          12/5/2011
      Description:   Withdrawal at 15 South Mayo Plaza, Paintsville, KY
      Amount:        $200.00

II.   Date:          12/8/2011
      Description:   Withdrawal at 15 South Mayo Plaza, Paintsville, KY
      Amount:        $450.00

JJ.   Date:          12/8/2011
      Description:   Withdrawal at 15 South Mayo Plaza, Paintsville, KY
      Amount:        $50.00

KK.   Date:          12/9/2011
      Description:   Withdrawal at 15 South Mayo Plaza, Paintsville, KY
      Amount:        $300.00

LL.   Date:          12/9/2011
      Description:   Withdrawal at 15 South Mayo Plaza, Paintsville, KY
      Amount:        $200.00

MM.   Date:          12/12/2011
      Description:   Withdrawal at 15 South Mayo Plaza, Paintsville, KY
      Amount:        $300.00

NN.   Date:          12/9/2011
      Description:   Withdrawal at 15 South Mayo Plaza, Paintsville, KY
      Amount:        $200.00

OO.   Date:          12/13/2011
      Description:   Withdrawal at 15 South Mayo Plaza, Paintsville, KY
      Amount:        $300.00

PP.   Date:          12/13/2011
      Description:   Withdrawal at 15 South Mayo Plaza, Paintsville, KY
      Amount:        $200.00

QQ.   Date:          12/14/2011
      Description:   Payment to American Electrical Power via BillMatrix, Columbus, OH
      Amount:        $198.58

RR.   Date:          12/14/2011
      Description:   Payment to American Electrical Power via BillMatrix, Columbus, OH
      Amount:        $135.18

SS.   Date:          12/16/2011
      Description:   Withdrawal at 15 South Mayo Plaza, Paintsville, KY
      Amount:        $302.50

8

TT.  Date:         12/16/2011
     Description:  Withdrawal at 15 South Mayo Plaza, Paintsville, KY
     Amount:       $300.00

UU.  Date:         12/16/2011
     Description:  Withdrawal at 15 South Mayo Plaza, Paintsville, KY
     Amount:       $202.50

VV.  Date:         12/16/2011
     Description:  Withdrawal at 15 South Mayo Plaza, Paintsville, KY
     Amount:       $200.00

WW.  Date:         12/21/2011
     Description:  Withdrawal at 15 South Mayo Plaza, Paintsville, KY
     Amount:       $300.00

XX.  Date:         12/21/2011
     Description:  Withdrawal at 15 South Mayo Plaza, Paintsville, KY
     Amount:       $200.00

YY.  Date:         12/22/2011
     Description:  Withdrawal at 15 South Mayo Plaza, Paintsville, KY
     Amount:       $300.00

ZZ.  Date:         12/22/2011
     Description:  Withdrawal at 15 South Mayo Plaza, Paintsville, KY
     Amount:       $200.00

AAA. Date:         12/22/2011
     Description:  Visa purchase of Redbox DVD rental, Oakbrook Terrace, Illinois
     Amount:       $1.27

BBB. Date:         12/22/2011
     Description:  Visa purchase of Redbox DVD rental, Oakbrook Terrace, Illinois
     Amount:       $1.27

CCC. Date:         12/27/2011
     Description:  Withdrawal at 15 South Mayo Plaza, Paintsville, KY
     Amount:       $1.27

DDD. Date:         12/27/2011
     Description:  Withdrawal at 15 South Mayo Plaza, Paintsville, KY
     Amount:       $200.00

21.     Upon information and belief, dozens of other purchases made via the debit card during said time frame also constituted acts of bank fraud in violation of 18 U.S.C. §1344.

22.     A true copy of Girard's bank statement, dated November 22, 2011, is attached hereto as Exhibit "B".

23.     A true copy of Girard's bank statement, dated December 27, 2011, is attached hereto as Exhibit "C".

24.     By engaging in said electronic transfers, defendants, acting through the Caudill Association, affected interstate commerce.

25.     Each and every act of bank fraud alleged above constitutes a predicate act of "racketeering activity" as defined by 18 U.S.C.S. §18 1961(1).

26.     In addition to the above-referenced instances of bank fraud, and without limitation, the following checks were drawn from the bank of Mark Girard via fraud and/or forgery:

A. Date:           11/10/11
   Check No.       1335
   Paid to:        Tracy Blair
   Amount:         $500

B. Date:           11/10/11
   Check No.       1336
   Paid to:        HSBC
   Amount:         $447.72

C. Date:           11/11/11
   Check No.       1338
   Paid to:        Donna Caudill
   Amount:         $500.00

D. Date:           11/10/11
   Check No.       1339
   Paid to:        Lendmark
   Amount:         $13,000

10

E.  Date:          11/18/11
    Check No.      1340
    Paid to:       Tracy Blair
    Amount:        $350.00

F.  Date:          11/10/11
    Check No.      1363
    Paid to:       Ron Spears
    Amount:        $500.00

G.  Date:          11/13/11
    Check No.      1391
    Paid to:       Tracy Blair
    Amount:        $500.00

H.  Date:          11/10/11
    Check No.      1422
    Paid to:       Tracy Blair
    Amount:        $1,000

I.  Date:          11/13/11
    Check No.      1391
    Paid to:       Tracy Blair
    Amount:        $500.00

J.  Date:          11/10/11
    Check No.      1422
    Paid to:       Tracy Blair
    Amount:        $1,000

K.  Date:          11/25/11
    Check No.      1342
    Paid to:       Donna Caudill
    Amount:        $500

L.  Date:          11/25/11
    Check No.      1343
    Paid to:       Big Sandy Superstore
    Amount:        $3,349.45

M.  Date:          11/26/11
    Check No.      1345
    Paid to:       Lacy Grim
    Amount:        $300

11

N. Date:          12/9/11
   Check No.      1366
   Paid to:       Donna Caudill
   Amount:        $500

O. Date:          12/7/11
   Check No.      1371
   Paid to:       Lacy Grim
   Amount:        $150

P. Date:          11/27/11
   Check No.      1425
   Paid to:       Ron Spears
   Amount:        $45

Q. Date:          12/5/11
   Check No.      1426
   Paid to:       Tracy Blair
   Amount:        $500

R. Date:          11/28/11
   Check No.      1428
   Paid to:       Lacy Grim
   Amount:        $21.00

S. Date:          12/14/11
   Check No.      1431
   Paid to:       Tracy Blair
   Amount:        $500

T. Date:          12/11/11
   Check No.      1511
   Paid to:       Ron Spears
   Amount:        $45

U. Date:          12/1/11
   Check No.      1544
   Paid to:       Tracy Blair
   Amount:        $400

V. Date:          12/19/11
   Check No.      1351
   Paid to:       Tracy Blair
   Amount:        $42,400

27.     The checks identified in paragraphs 25.D. and 25.V., and the other transactions when combined in any number of ways, constitute unlawful monetary transactions with a criminally-derived value greater than $10,000 from which some or all defendants profited in violation of 18 U.S.C.§1957, such that each constitutes a separate predicate act of racketeering in violation of 18 U.S.C. §1961(1).

28.     In addition to the above, defendants were aware that Mark Girard owned an interest in real property located in Brooklyn, New York, for which he was receiving monthly rental checks from his aunt, who resided in New Jersey.

29.     Defendants Caudill, Tracy Blair a.k.a. Tracy Spears, and Lacy Crothers, a.k.a. Lacy Grim, a.k.a. Lacy Spears, had previously conspired to cause Mark Girard to execute a Will and/or otherwise had the Will forged.  Said purported Will, allegedly dated June 23, 2011, left the Estate of Mark Girard to Donna Caudill as beneficiary, and to Lacy Spears and Tracy Spears as residual beneficiaries in the event Donna Caudill predeceased Mark Girard.  A true copy of the purported Will is attached hereto as Exhibit "D".

30.     Though the Will was probated as a "self-proving" Will, the Notary Public, Linda Spradlin, who purportedly witnessed the signature and recorded oaths, denies having witnessed said signatures, recording said oaths, or seeing Mark Girard in the office on the day of the purported notarization. A true copy of an Affidavit of Linda Spradlin, duly sworn 24 April, 2014, is attached hereto as Exhibit "E".

31.     Upon information and belief, the purported Will was the product of forgery and/or undue influence and/or was obtained from a testator who was not mentally competent to execute said instrument, and was allegedly "witnessed" only by interested parties, being the attorney who purportedly drafted the Will, and Leonard Caudill, the father of defendant and purported beneficiary Donna Caudill, and grandfather of purported contingent beneficiaries Lacy Spears and Tracy Spears.

32.     Upon information and belief, defendants believed that Girard also maintained a safe deposit box in New York which contained items of significant value.

33.     Upon information and belief, defendants knew that Girard's bank statement was scheduled to arrive in his home on or about Tuesday, January 3, 2012, and that his review of same would have revealed the frauds committed by the defendants associated with the Caudill Association, who Girard had been misled into believing were his friends.

34.     Upon information and belief, defendants conspired to carry out the murder by drugging and arson of Mark Girard, setting the evening and/or early morning hours of January 2, and January 3, 2012, as the appointed time for the arson and murder.

35.     Upon information and belief, some or all individuals within the Caudill Association plotted and conspired to burn Girard to death, probate his purported Will, destroy all evidence of their crimes, and then thereafter further to enrich themselves with the property, personal and/or real, owned by Mark Girard in New York, from which they intended to benefit by virtue of Donna Caudill's inheritance under the purported Will.

36.     Legal claims to such real and personal property in New York were ultimately made by Caudill for the benefit of the Caudill Association, and continue to be made, such that her actions on behalf of the Caudill Association continue to affect interstate commerce.

37.     Upon information and belief, on the evening of January 2, 2012, Caudill and/or other individuals, and with the knowledge and/or assistance of some or all of the defendants including, but not limited to, Tracy Blair, Lacy Crothers and Bill Tom Crothers, placed Girard in bed and drugged him with a toxic combination of illicit drugs, including Nordiazepam, Hydrocodone, Temazepam, Oxazepam, and Hydromorphone which likely caused him to fall into a coma and/or otherwise caused him to fall asleep, such that he would be incapable of awakening during the course of the planned fire.

14

38.     The act of providing and/or administering the aforesaid drugs on Girard, as alleged, is prohibited under 21 U.S.C. §841(a) as, upon information and belief, some or all of the aforesaid drugs are scheduled pursuant to 21 U.S.C §802 and, thus, each and every use of each and every drug in the alleged commission of their crimes constitutes a separate constitutes a predicate act of racketeering pursuant to 18 U.S.C. §1961(1).

39.     Upon information and belief, some or all of the defendants then participated in removing Girard's financial documents and any valuables from his home, and also put Girard's dog out of the home to protect it from the planned act of arson.

40.     Upon information and belief, with Girard asleep in his bed, having been rendered unconscious by the drugging, defendants set the bed ablaze, dropping cigarette butts and a cigarette package onto the bed so as to provide the appearance that the fire was caused by Girard's having fallen asleep while smoking in bed, and then left the scene, ultimately resulting in the pre-meditated murder of Mark Girard.

41.     Defendants' alleged acts of arson were illegal under Kentucky statutes and/or common law and constitute racketeering activity within the meaning of 18 U.S.C. §1961(1).

42.     Defendants' alleged acts in conspiring to and causing the pre-meditated murder of Mark Girard were illegal under Kentucky statutes and/or common law, and constitute racketeering activity within the meaning of 18 U.S.C. §1961(1).

43.     The fire was reported to authorities at around 3:40 a.m. on January 3, 2012.  At around 4:10 a.m., while the fire department was attempting to extinguish the blaze and police were present, defendant Tracy Blair appeared at the scene of the crime.

44.     Blair falsely held herself out to police out as the step-daughter of Mark Girard, and unwittingly placed Donna Caudill at the scene of the crime in the hours prior to the fire by advising

15

that Caudill had bathed and put Girard to bed on the evening of January 2, 2012, at approximately 9:00 p.m. She further advised police that Girard liked to smoke in bed.

45.     Upon information and belief, Tracy Blair's arrival on the scene was for the purpose of attempting to cause authorities to believe that the fire was caused by Girard's smoking, in an effort to avoid further investigation of the scene for purposes of concealing their opprobrious criminal conduct.

46.     At approximately 2:30 p.m. on January 3, 2012, when State Police arrived at the scene and were conducting investigation into the fire and Girard's death, defendant Bill Tom Crothers arrived purportedly to recover the dog that remained outside. Crothers asserted that "he didn't understand why the state police was *[sic]* on the scene and that this was nothing but an accident," and that "it didn't need to be made a big deal of."

47.     After it was explained to Crothers that a thorough investigation was necessary given the fatality, Crothers responded that he "understood but that it was only a bad accident, that everyone knew he was a heavy smoker and people had seen the cigarette burns on his bedding before."

48.     A true copy of the police report detailing said conversations is attached hereto as Exhibit "F".

49.     Upon information and belief, Crothers' conversation with the police was caused as part of defendants' conspiracy on behalf of the enterprise, the Caudill Association, in order to attempt to convince police that a crime had not been committed, but that the fire and death was smoking-related, in an effort to conceal their atrocities.

50.     Police found two cigarette butts in the burned rubble of the house in the bedroom area and, due to heavy damage, the fire was deemed to be of undetermined origin.

51.     Upon information and belief, the day after the fire, Donna Caudill probated the purported Will, had Girard's body cremated, and had his home bulldozed, all for the purpose of

16

destroying any and all evidence of the racketeering conspiracy, including bank fraud, arson and murder, in order to enable the claim to Girard's real and personal property in New York.

52.   A true copy of the Petition to Probate Will and Appoint Executrix, dated January 4, 2012, is attached hereto as Exhibit "G".

53.   A true copy of the Petition By Crematory to Authorize Cremation of Decedent and Order, dated January 4, 2012, is attached hereto as Exhibit "H".

54.   Unknown to defendants who, upon information and belief, believed that all evidence of their nefarious acts had been destroyed, an autopsy of Girard was conducted on January 3, 2012, prior to the cremation of the body.   While the body was badly burned, the autopsy resulted in recovery of Girard's blood and urine samples, which on March 13, 2012, revealed the toxic stew of unprescribed opiates, sleep medication and muscle relaxants which, upon information and belief, were administered to him by some or all of the defendants.   A true copy of the autopsy report is attached hereto as Exhibit "I"

55.   Moreover, and unbeknownst to defendants, on December 16, 2011, Girard had a telephone conversation with his aunt, who had purchased Girard's interest in the Flatbush Avenue, Brooklyn real property, resulting in the check being drawn on the account of Bonfiglio & Asterita in New York.

56.   During said telephone conversation, Girard advised that he often fell from bed and had to lay there until somebody would find him. Girard noted that due to his condition, he had not deposited the sales proceeds sent to him by Bonfiglio & Asterita on November 2, 2011, since he was concerned that doing so would preclude his ability to gain acceptance into a nursing facility.   Girard further indicated that he had a "friend" named Donna Caudill who supposedly took care of him, and that perhaps future rent checks from another New York property in which he had a partial ownership

17

interest could be sent to her, in order to protect the assets in the event he attempted to gain admission to a nursing care facility.

57.     Also unknown to the defendants was that Girard's aunt, who never previously had heard of Caudill although she maintained a relationship with Mark Girard, thereafter conferred with her attorney and described the phone conversation with Girard in a writing, dated December 17, 2011. Her attorney responded in writing that the check could not be issued and would have to be reported to any nursing facility despite it not being deposited. A true copy of the email exchange between Girard's aunt and her attorney is attached hereto as Exhibit "J".

58.     On the morning of the fire, although she never had previously spoken with Girard's aunt, defendant Caudill telephoned her to advise of the fire and of her nephew's death as a result thereof.

59.     Upon hearing of same, Girard's aunt again contacted her attorney and noted that the check sent on November 2, 2011, probably had been consumed in the fire unless Girard's "friend" had it.   Thus, she urged that a "stop-payment" be made on the check.   A true copy of said communication is attached hereto as Exhibit "K".

60.     Thereafter, the attorney retrieved his firm's bank record, which revealed that the check which Girard believed had not been deposited as of December 16, 2011, actually was deposited on November 3, 2011, and so notified Girard's aunt, in a communication dated January 11, 2012, a true copy of which is attached hereto as Exhibit "L".

61.     A true copy of the Deposition of Maryann Girard, Mark Girard's aunt, duly sworn and videotaped on September 25, 2014, properly noticed to Donna Caudill and her counsel who chose not to appear, is attached hereto as Exhibit "M".

18

62.     A true copy of the Deposition of Joseph Asterita, Esq., attorney of Maryann Girard, duly sworn and videotaped on September 25, 2014, properly noticed to Donna Caudill and her counsel who chose not to appear, is attached hereto as Exhibit "N".

63.     A subsequent subpoena of Girard's bank records revealed the massive fraud and theft that had occurred as aforesaid.

64.     Upon being presented evidence that perhaps a fraud had been committed against Girard, on advice of her legal counsel for such reason, Caudill entered an Agreed Order in which she gave up any purported rights to Mark Girard's real property in New York, but in which she maintained the rights to a purported safe deposit box in New York, such that her entry into the Agreed Order affected interstate commerce.

65.     A true copy of a draft motion and letter from Laudien's counsel to Caudill's counsel, dated May 8, 2012, is attached hereto as Exhibit "O".

66.     A true copy of a draft Agreed Order, reflecting the nature of the conversations between counsel and the ultimate intent of the final Agreed Order, is attached hereto as Exhibit "P".

67.     Upon information and belief, the final Agreed Order was drafted more vaguely by Caudill's counsel in order to protect Caudill against implication in crimes, though its intent was the same as that in the prior draft. A true copy of the final Agreed Order, dated July 19, 2012, is attached hereto as Exhibit "Q".

68.     Thereafter, with proceeds gained through the conspiracy, one or more of the defendants endeavored to determine the value of the New York real estate which Donna Caudill had relinquished to the family members of Mark Girard as a result of her fear of prosecution. At around the same time, the property in New York was sold to a developer for $34,000,000, a percentage of which is owned by the Estate of Mark Girard.

69.     Upon learning that Girard's share may be very valuable, Caudill attempted to vacate said Agreed Order for the purpose of attempting to gain an ownership interest in said New York real property for herself and/or for the benefit of her co-conspirators of the Caudill Association.

70.     On September 17, 2014, Caudill filed a Renewed Motion to Remove Administrator, to Increase Bond, and Appoint Successor Administrator with the Johnson District Court, Probate Division, Docket No. 12-P-00001, which upon information and belief contained allegations approved by Caudill while knowing that same constituted frauds on the Court, including the following:

A. "Donna Caudill agreed to resign as Executor for the Estate at the encouragement of her former counsel based on advice that the decedent's family members were dangerous individuals and were threatening to do harm to Caudill should she not resign as personal representative in favor of Victoria Laudien.  There was no consideration to support such and [sic] agreement.  It was made under coercion, duress and undue influence."

B. "Donna Caudill was advised by counsel that the value of the estate was limited to a bank account in Johnson County with a balance of $98.00 and property located at 1132 State Street, Paintsville, KY valued at $8,000, with the potential of the contents of a suspected safe deposit box in New York.  No such box existed."

71.     Indeed, in the Probate Petition filed by Caudill on January 4, 2012 which, upon information and belief, was written in her own hand, she lists "Real Estate in NY- Rental –Value Unknown," as an asset of Girard's estate.

72.     A true copy of Caudill's Renewed Motion to Remove Administrator With Will Annexed and to Increase Bond and Appoint Successor Administrator With Will Annexed, is attached hereto as Exhibit "R".

73.     Acting on the good faith belief that Caudill had abandoned her interest in the remainder of the Estate besides those things specified in the final Agreed Order, Laudien treated the

20

continued income from the real property in New York, including some sales proceeds, as being an intestate asset of the Estate to which the natural heirs are and were entitled, and made distributions in accordance therewith.

74.     In a continued bad faith effort to damage Laudien and the natural heirs while benefitting the Caudill Association, Caudill has now petitioned the Court for a return of all monies so-treated, and for the posting of a bond in the amount of $38.5 million, building upon her frauds on the Court, and are an endeavor in defrauding the natural heirs of the Estate of Mark Girard through the use of legal process. A true copy of said motion is attached hereto as Exhibit "S".

75.     Upon information and belief, the aforesaid pleadings, at direction of Donna Caudill, were transmitted through the U.S. Mail in furtherance of promoting, managing, establishing, carrying on and/or facilitating the promotion, management, establishment and/or carrying on of the aforesaid unlawful activity including, without limitation, arson in violation of the laws of the State of Kentucky, with the intent to distribute proceeds derived from such conduct, in violation of 18 U.S.C. §1952(a), and thus constitute predicate acts of racketeering pursuant to 18 U.S.C. §1961(1).

76.     The acts of defendants as aforesaid constitute violations of 18 U.S.C. §1962(a), as defendants derived income directly and/or indirectly from a pattern of racketeering activity which was used directly or indirectly, or the proceeds of which such income was used, in the establishment and operation of said enterprise, and which activities affected interstate commerce.

## SECOND COUNT

### Racketeering: 18 U.S.C. §1962(c)

77.     The plaintiff repeats and reasserts each and every allegation above as if fully set forth herein at length.

78.     The aforesaid conduct constitutes a violation of 18 U.S.C. §1962(c) and, thus, entitles the plaintiff to judgment against the defendants, jointly and severally.

21

## THIRD COUNT

### *Racketeering Conspiracy: 18 U.S.C. §1962(d)*

79.     The plaintiff repeats and reasserts each and every allegation above as if fully set forth herein at length.

80.     The aforesaid conduct constitutes a violation of 18 U.S.C. §1962(d) and, thus, entitles the plaintiff to judgment against the defendants, jointly and severally.

## FOURTH COUNT

### *Fraud*

81.     The plaintiff repeats and reasserts each and every allegation above as if fully set forth herein at length.

82.     The acts of the defendants, individually, jointly and severally, constituted frauds of commission and/or omission as against Mark Girard, thus causing him damage.

83.     Said frauds continue to this day and are and continue causing damage to the natural heirs of the Estate of Mark Girard.

**WHEREFORE**, the plaintiff demands judgment in her favor individually and/or as Administratix of the Estate of Mark Girard, and against the defendants, jointly and severally, as follows:

A) Compensatory damages pursuant to 18 U.S.C. §1964;

B) Treble damages pursuant to 18 U.S.C. §1964;

C) Punitive Damages;

D) An award of reasonable attorneys' fees and costs of suit in keeping with 18 U.S.C. §1964(c);

E) Such and other further relief as this Court deems equitable and just.

22

## JURY DEMAND

Plaintiff demands a trial by a jury of persons as to all counts so triable.

Respectfully submitted,

**WEINER LESNIAK LLP**

By: _____
    Ronald A. Berutti
    A Member of the Firm
    629 Parsippany Road
    Parsippany, NJ 07054
    (973) 403-1100
    rberutti@weinerlesniak.com

**STRATTON LAW FIRM, P.S.C.**

By: _____
    David C. Stratton, Esq.
    P.O. Box 1530
    Pikeville, KY 41502
    (606) 437-7800
    dcstratton@setel.com

Date:   October 16, 2014