UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| VICTORIA LAUDIEN, *Administratrix of the Estate of Mark Girard,* et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>DONNA CAUDILL, et al.,<br><br>    Defendants. | Civil No. 14-147-ART<br><br>**MEMORANDUM OPINION & ORDER** |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

In a motion to dismiss, the defendant must show that the plaintiff's complaint fails to state a plausible claim for relief. Plaintiff Victoria Laudien claims that the defendants, including Donna Caudill, engaged in a series of acts—from check forgery and fraudulent probate proceedings to murder and arson—to defraud Mark Girard and his estate. While those crimes are generally matters of state law, Laudien argues that the defendants are liable under the federal Racketeer Influenced and Corrupt Organizations Act as an enterprise engaged in a pattern of racketeering. Caudill's motion to dismiss challenges primarily the existence of an enterprise but does not contest several allegations in the complaint. With regard to the arguments that Caudill does raise, Laudien's complaint overcomes the motion to dismiss.

## BACKGROUND

At the motion-to-dismiss stage, the Court accepts the plaintiff's allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). The complaint alleges the following: In the summer of 2011, Donna Caudill, with the assistance of her two daughters, fraudulently induced her ex-husband, Mark Girard, to execute a will devising his estate to Caudill. R. 1 ¶ 29. In the event that Caudill died before Girard, the estate would pass to her daughters, Tracy Blair and Lacy Crothers. *Id.* Caudill's father and Caudill's attorney witnessed the will, and the will contained a purported notarization from Linda Spradlin. *Id.* ¶¶ 30, 31. Spradlin, however, denies witnessing the signing of the will or seeing Girard in her office on the day of the will's execution. *Id.* ¶ 30.

Several months later, Caudill, Blair, Crothers and Crothers' husband, William Thomas Crothers, expanded the scheme to defraud Girard. On November 2, 2011, Girard received a check for $92,843.25 from the sale of his ownership interest in New York real estate. *Id.* ¶ 12; R. 1-1 at 2 (Exhibit A).[1] Contrary to most people's reaction to receiving that amount of money, Girard did not want to immediately deposit the check. Girard, who was a quadriplegic, told his aunt, Maryann Girard, that cashing the check would increase his income and prevent him from moving to a nursing home (presumably because the home accepted only individuals below a certain income level). R. 1 ¶¶ 13, 15, 56. But the

---

[1] "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

defendants had other plans. They deposited Girard's check on November 3, 2011. *Id.* ¶¶ 16, 18. In November and December 2011, they withdrew money from Girard's bank account over fifty times with his debit card. *Id.* ¶ 20. They also forged over twenty checks from Girard—many of which they made out to themselves, including a $42,400 check to Tracy Blair. *Id.* ¶ 26.

Concerned that Girard might discover their fraudulent acts when the bank statement arrived in early January, the defendants took drastic action. *Id.* ¶ 33. During the evening of January 2, 2012, Caudill "with the knowledge and/or assistance of" Blair, Crothers, and William Crothers, drugged Girard with "a toxic combination of Nordiazepam, Hydrocodone, Temazepam, Oxazepam, and Hydromorphone," causing him to fall asleep or become comatose. *Id.* ¶ 37. The defendants then "set the bed ablaze, dropping cigarette butts and a cigarette package onto the bed" to make it appear that Girard had caused the fire by smoking in bed. *Id.* ¶ 40.

The fire was reported to the authorities at 3:40 a.m. on January 3, 2012. *Id.* ¶ 43. At 4:10 a.m., Blair appeared at the scene. *Id.* She "falsely held herself out to police . . . as the step-daughter of Mark Girard." *Id.* ¶ 44. She told the police that Girard smoked in bed and that Caudill had put Girard to bed at 9:00 p.m. the previous night. *Id.*

At 2:30 p.m., William Crothers came to (what remained of) Girard's house to pick up Girard's dog. *Id.* ¶ 46. Police were still investigating the scene. Crothers told the officers that "he didn't understand why the state police w[ere] on the scene and that this was nothing but an accident." *Id.* Crothers explained that "everyone knew [Girard] was a heavy smoker and people had seen the cigarette burns on his bedding before." *Id.* ¶ 47.

The following day, January 4, 2012, Caudill probated Girard's will, cremated his body, and bulldozed what was left of Girard's house. *Id.* ¶ 51. Before Girard's cremation, however, an autopsy was performed. *Id.* ¶ 54. The results from the autopsy, which came back on March 13, 2012, showed that Girard had various drugs in his system when he died. *Id.* ¶ 54. No charges were filed in the death of Girard or in the fire at his home.

At this point, Caudill was the sole beneficiary under Girard's will. Apparently due to the suspicious circumstances surrounding Girard's death, Caudill entered into an agreed order with Laudien (Girard's natural heir) in July 2012. Under that order, Laudien became executrix of Girard's Estate, while Caudill retained an interest in a safe deposit box that Girard purportedly owned in New York. R. 1-1 ¶ 66; R. 1-17. But it later turned out that the safe deposit box did not exist. R. 1-1 ¶ 70.

In 2014, Caudill learned that Girard's Estate was entitled to a portion of a $34,000,000 sale of New York real estate. R. 1 ¶¶ 68, 69. After hearing that news, Caudill attempted to "vacate [the] Agreed Order for the purpose of attempting to gain an ownership interest in [the] New York real property." *Id.* ¶ 69. In September and October 2014, Caudill petitioned the state probate court to have Laudien return the money from that sale, which Laudien had already distributed, back to the Estate. *Id.* ¶ 70. Caudill took those acts to "benefit[] the Caudill Association." *Id.* ¶ 74.

On October 17, 2014, Laudien filed this action in her individual capacity and as administratrix of the estate of Mark Girard. She alleges fraud and civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Id.* ¶¶ 11–83. Caudill filed a motion to dismiss. *See* R. 22. Tracy Blair and Lacy Crothers filed answers to Laudien's

complaint, but did not join the motion to dismiss. *See* R. 13; R. 16. William Crothers has filed neither an answer nor a motion to dismiss.

## DISCUSSION

The defendant bears "the burden of showing that the plaintiff has failed to state a claim for relief." *Crugher v. Prelesnik*, 761 F.3d 610, 614 (6th Cir. 2014) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plausibility "does not impose a probability requirement at the pleading stage." *Id.* at 556. Rather, a claim is plausible where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the pleading stage, the Court must take all of the factual allegations as true, and construe the complaint in the plaintiff's favor. *Twombly*, 550 U.S. at 555–56.

### I. RICO Enterprise

Caudill contends that the complaint fails to adequately allege the existence of a RICO enterprise. *See* R. 22-1. RICO imposes both civil and criminal liability on a person "associated with any enterprise" involved in a pattern of racketeering. 18 U.S.C. § 1962(c); *id.* § 1964 ("Civil Remedies"). An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals *associated in fact* although not a legal entity." *Id.* § 1961(4) (emphasis added). The Supreme Court has clarified that an associated-in-fact enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and

longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 945–47 (2009); *see also United States v. Turkette,* 452 U.S. 576, 583 (1981) (explaining that an association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct"). The reach of RICO's enterprise requirement is "obviously broad" and "the very concept of an association in fact is expansive." *Boyle*, 556 U.S. at 944; *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 492 (6th Cir. 2013) (noting that defendant could not "easily" dispute the existence of an enterprise "given the Supreme Court's repeated admonitions that the term 'enterprise' . . . should be interpreted broadly"). In addition to the broad reach of "enterprise," RICO instructs "that its terms are to be 'liberally construed to effectuate its remedial purposes.'" *Boyle*, 556 U.S. at 944 (quoting Organized Crime Control Act of 1970, Pub. L. No. 91-452, § 904(a), 84 Stat. 922, 947)); *see also Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 794 (6th Cir. 2012) (discussing RICO's "statutory requirement of liberal construction"). Under those standards, Laudien's complaint adequately pleads all three requirements of a RICO enterprise.

Laudien identifies the alleged RICO enterprise as the "Caudill Association," consisting of defendants Caudill, Tracy Blair, Lacy Crothers, William Crothers, and other unnamed defendants. R. 1 ¶¶ 5–17. Laudien sufficiently alleges the purpose of the Caudill Association: "to defraud decedent Mark Girard . . . of all of his assets." *Id.* ¶ 1. According to Laudien, the Caudill Association achieved this purpose through (1) "the repeated commission of bank fraud"; (2) "a pre-meditated murder by arson . . . to evade detection and to avoid prosecution" for the bank fraud and (3) fraudulent receipt of "Girard's assets

6

through an ill-gotten inheritance." *Id.* The complaint contains many examples of the alleged bank fraud, specific allegations about the arson and the murder of Girard, and details of the fraudulently obtained inheritance. *Id.* ¶¶ 1–74. Laudien pleads that the named defendants were involved in some or all of those acts. *Id.* That pleading suffices to plausibly suggest a common purpose among the defendants.

The second requirement of an enterprise is "relationships among those associated with the enterprise." *Boyle*, 556 U.S. at 946. The type of relationships needed for an enterprise includes "interpersonal relationships" with "a common interest" between the individuals in the enterprise. *Id.* (defining "association" as a "collection of persons who have joined together for a certain object" (quoting Black's Law Dictionary 156 (rev. 4th ed. 1968))); *see also id.* (defining "structure" as "the pattern of relationships, as of status or friendship, existing among the members of a group or society" (quoting Random House Dictionary of the English Language 1410 (1967))).

Laudien adequately alleges relationships among the defendants. First, the named defendants are all related in the familial sense: Caudill is the mother of Tracy Blair and Lacy Crothers, and Lacy Crothers is (or was) married to William Crothers. R. 1 ¶¶ 5–9. Second, the complaint contains sufficient facts to plausibly suggest that the relationships extended beyond familial bonds. According to Laudien, Caudill and her two daughters either forged Girard's will or unduly influenced Girard into making the will. *Id.* ¶¶ 30–31. Caudill, her two daughters, and William Crothers then defrauded Girard of thousands of dollars. In an effort to conceal their acts, they drugged Girard, set fire to his home, and covered up the crime—Caudill by bulldozing the home and cremating the body the next day, Blair by

7

alerting the police to Girard's smoking habit, and William Crothers by assuring the police that the arson was just an accident. *Id.* ¶¶ 37–51. That level of coordination suggests that the relationships between the members of the Caudill Association extended beyond sharing family dinners.

Laudien's complaint also adequately pleads the longevity requirement of an enterprise. According to the complaint, the predicate acts began in November 2011, continued through January 2012, and then resumed in September 2014, when Caudill moved to vacate the agreed order in the probate proceeding. Laudien further alleges that Caudill has recently petitioned the probate court to have Laudien return certain proceeds she distributed, as executrix, to Girard's heirs. Enterprises lasting several years satisfy longevity. *See Ouwinga*, 694 F.3d at 795 (holding that allegation of enterprise's existence for "at least five years" satisfied longevity); *United States v. Eiland*, 738 F.3d 338, 360 (D.C. Cir. 2013) (holding that two years satisfied longevity). Even though the enterprise lay dormant between 2012 and 2014, "nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence." *Boyle*, 556 U.S. at 948. That makes sense. Otherwise, enterprises could avoid RICO law by simply pausing their activities for short periods of time. Laudien has made a plausible showing that the total duration of the enterprise was approximately four years, which is enough time to "permit the[] associates to pursue the enterprise's purpose." *Id.* at 946.

According to Caudill, "the alleged association was not continuous." R. 22-1 at 3; R. 33 at 2. In her briefing on this issue, Caudill cites to both *Boyle* and *H.J., Inc. v. Northwestern Bell Telephone, Co.*, 492 U.S. 229, 242 (1989). *H.J.* and *Boyle* apply to two

8

different RICO elements: *H.J.* dealt with the continuity of a pattern of racketeering, while *Boyle* established the longevity requirement for an enterprise. *See H.J., Inc.*, 492 U.S. at 241–42; *Boyle*, 556 U.S. at 946. Caudill does not make any reference to a pattern of racketeering in either her initial motion or her reply, but rather focuses on the duration of the enterprise. *See* R. 22-1 at 3 ("[T]he alleged association-in-fact[ ]did not extend over a substantial period of time."). The Court will not develop a pattern-of-racketeering argument for Caudill where her brief addresses only the requirements for an enterprise. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

On longevity, Caudill's motion to dismiss contends only that "the predicate acts began in November 2011 and ended in January 2012." R. 22-1 at 3. Caudill does not acknowledge any of the alleged predicate acts in 2014 surrounding the probate proceeding. She does not argue that the 2014 allegations are not predicate acts or that they should be disregarded. That silence proves fatal to her motion to dismiss. *See Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991) (holding that, for Rule 12(b)(6) motions, "the movant must always bear th[e] initial burden"). Once the 2014 predicate acts are included, the enterprise's life span is not two months, but close to four years. There is no justifiable reason for Caudill to simply ignore those 2014 acts. Laudien referred to the 2014 acts in both her complaint and in her response to the motion to dismiss. R. 1 ¶¶ 74–76; R. 30 at 12 (highlighting the "extensive allegations detailing activities beginning in 2011 and still proceeding today," and how the enterprise is "trying to defraud the estate through court filings containing

9

falsehoods"). Without even a mention of the 2014 acts, Caudill cannot show that the complaint fails to sufficiently allege longevity—and the Court will not create arguments for Caudill. *See McPherson*, 125 F.3d at 995–96. Looking at the entirety of the complaint, and with no argument from Caudill regarding the 2014 acts, the Court will not dismiss Laudien's complaint based on a lack of longevity.

Caudill's remaining arguments contradict *Boyle*.[2] Caudill first contends that the Caudill Association is not an enterprise because it lacked formal structure and roles. *Boyle*, however, did away with such distinctions. The Supreme Court held that there was "no basis" to impose structural requirements such as hierarchy, role differentiation, chain of command, professionalism or sophistication. *Boyle*, 556 U.S. at 948. Rather, an enterprise may be an "informal group" with "not much structure." *Id.* (internal quotation marks omitted). The only structure required is a common purpose, with relationships among the defendants, and longevity. *Id.* For each of those requirements, Laudien has alleged sufficient facts to plausibly establish an enterprise.

Caudill also claims that Laudien has not alleged that the Caudill Association existed separate from the acts of racketeering. R. 33 at 2. While enterprise and pattern of racketeering are separate elements of a RICO violation, "the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'" *Boyle*, 556 U.S. at 947 (quoting *Turkette*, 452 U.S. at 583). An enterprise

---

[2] Caudill relies in part on *VanDenBroeck v. CommonPoint Mortgage*, 210 F.3d 696, 699 (6th Cir. 2000), for the required showing for an enterprise. While Caudill acknowledges that the Supreme Court overruled *VanDenBroeck*'s holding on reliance in *Bridge v. Phoenix Bond & Indemnity Co.*, 533 U.S. 639, 661 (2008), the Sixth Circuit recently explained that *VanDenBroeck* was also "abrogated by . . . *Boyle*." *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 266 n.7 (6th Cir. 2014).

may have been "formed solely for the purpose of engaging in the racketeering activity." *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 265 (6th Cir. 2014). In pleading enterprise, the plaintiff may use the "same facts" to allege "the separate elements of 'enterprise' and 'pattern of racketeering activity.'" *Begala v. PNC Bank, Oh., Nat'l Ass'n*, 214 F.3d 776, 781–82 (6th Cir. 2000); *United States v. Qaoud*, 777 F.2d 1105, 1115 (6th Cir. 1985) ("Although 'enterprise' and 'pattern of racketeering activity' are separate elements, they may be proved by the same evidence."). Indeed, the Sixth Circuit recently held that a district court contravened both *Boyle* and Sixth Circuit precedent when it dismissed a complaint for failure to allege a "structure distinct from the pattern of racketeering." *Ouwinga*, 694 F.3d at 794.

Instead of the need for separate evidence of an enterprise and a pattern of racketeering, an enterprise may be "inferred from the evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity." *Boyle*, 556 U.S. at 947. Laudien has alleged facts allowing for the inference of an enterprise. *Id.* at 942 n.1 ("Common sense suggests that the existence of an association-in-fact is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure."). The alleged involvement of Caudill and others in fraud, arson, and murder evinces "an ongoing organization [where] . . . the various associates function[ed] as a continuing unit." *Turkette*, 452 U.S. at 583. Those acts—especially the arson, murder, and attempts to throw the police off the trail—plausibly required coordination among the members of the Association. Accordingly, Laudien has met her pleading burden.

## II. RICO Conspiracy

Caudill also argues that Laudien has not adequately pled a RICO conspiracy. *See* 18 U.S.C. § 1962(d) ("It shall be unlawful for any person to conspire to violate any of the provisions . . . of this section."). The only argument Caudill makes on this point is that Laudien has not alleged the existence of an agreement. R. 22-1 at 3–4. To sufficiently plead an agreement in a RICO conspiracy, Laudien need allege only that "the defendant objectively manifested an agreement to participate directly or indirectly in the affairs of an enterprise through the commission of two or more predicate crimes." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 411 (6th Cir. 2012) (internal quotation marks omitted). In *Heinrich*, the plaintiffs satisfied this requirement where the agreement could "be inferred from the individual defendants' involvement in the four well-pled predicate acts." *Id.* Here, Laudien alleges that Caudill conspired to commit bank fraud, the arson-murder and cover-up, and fraudulent probate proceedings. Those acts permit the inference that Caudill "manifested an agreement to participate" in the affairs of the Caudill Association. *Id.*

The Court will not address the other elements of conspiracy because Caudill has forfeited those arguments. Caudill refers to the remaining elements in a "perfunctory manner" with no "effort at developed argumentation." *McPherson*, 125 F.3d at 995–96. Simply claiming that Laudien has failed "to establish each of the elements of a conspiracy" is not a developed argument. R. 22-1 at 3. The Court, as a neutral arbiter, will not write the briefs for the parties.

### III. *Rooker-Feldman*

Caudill's last argument is that the Court lacks jurisdiction over this case under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments . . . and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). According to Caudill, Laudien's suit is actually a challenge to the state-probate action. R. 22-1 at 4. That argument has no merit. First, there is no final state-court judgment—Caudill acknowledges that the probate action is "currently pending in Johnson District Court." *Id.*; *see Exxon*, 544 U.S. at 292 ("This Court has repeatedly held that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." (internal quotation marks omitted)). Second, Laudien does not challenge the outcome of the probate proceeding; rather, her complaint is under the federal RICO statute. *See Skinner v. Switzer*, 131 S. Ct. 1289, 1297 (2011) ("'If a federal plaintiff present[s] [an] independent claim,' it is not an impediment to the exercise of federal jurisdiction that the 'same or a related question' was earlier aired between the parties in state court." (quoting *Exxon*, 544 U.S. at 292–93)). While certain allegations concern the probate proceeding, the complaint does not seek to overturn any state-court judgment, and the Court is not reviewing any state-court proceedings. The "narrow ground" of *Rooker-Feldman* does not apply, and the Court has jurisdiction. *Exxon*, 544 U.S. at 284.

**CONCLUSION**

Accordingly, it is **ORDERED** that Caudill's motion to dismiss, R. 22, is **DENIED**.

This the 19th day of February, 2015.

Signed By:
*Amul R. Thapar* AT
United States District Judge